UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| MARNITA GODDARD, | ) | CIV. 09-5069-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PARTIES' |
| vs. | ) | OBJECTIONS AND |
| | ) | ADOPTING REPORT AND |
| CITY OF DEADWOOD and | ) | RECOMMENDATION |
| SOUTH DAKOTA PUBLIC | ) | |
| ASSURANCE ALLIANCE, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Plaintiff Marnita Goddard originally brought a personal injury claim against the City of Deadwood, South Dakota (the "City"), arising from the crash of a city operated trolley. (Docket 1). The court granted plaintiff leave to amend her complaint to include a claim against the South Dakota Public Assurance Alliance ("SDPAA"). (Docket 22). Plaintiff's second corrected amended complaint ("complaint") included a direct claim against the City for the negligence of its trolley operator (Count 1) and a claim against SDPAA for the negligence of an unidentified vehicle ("phantom driver") as an uninsured motorist (Count II). (Docket 26). Both defendants filed answers and SDPAA filed a cross-claim against the City. (Dockets 27 and 31). Ms. Goddard subsequently settled her claim against the City. (Docket 70). The court granted the City's unopposed motion to dismiss the complaint against the

City. (Docket 72). SDPAA's cross-claim against the City remains intact. (Docket 70).

SDPAA moved for summary judgment on all of plaintiff's claims. (Docket 41). Plaintiff moved for partial summary judgment on two issues: (1) she was not barred from recovery on the theories of assumption of the risk or contributory negligence; and (2) she was, in fact, injured as a result of the crash of the trolley. (Docket 56). The court referred the motions to Magistrate Judge Veronica L. Duffy for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket 69).

On June 3, 2011, Magistrate Judge Duffy filed a report and recommendation concluding that the court should grant SDPAA's motion for summary judgment. (Docket 73). The report and recommendation also provided alternative recommendations on separate issues raised during briefing. Both plaintiff and SDPAA timely filed objections. (Dockets 75 and 77). The court reviews *de novo* those portions of the report and recommendation which are the subject of objections. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). For the reasons stated below, the parties' objections are overruled and the report and recommendation of the magistrate judge is adopted in its entirety.

**DISCUSSION**

**A. MAGISTRATE JUDGE'S FINDINGS OF FACT**

Neither party objected to the magistrate judge's findings of fact. See Dockets 75 and 77. The magistrate judge's findings of fact are adopted by the court in accordance with 28 U.S.C. § 636(b)(1)(C).

**B. MAGISTRATE JUDGE'S CONCLUSIONS OF LAW**

Plaintiff's objections to the magistrate judge's conclusions of law and recommendations are summarized as follows:

1. The magistrate judge erred as a matter of law in concluding Goddard is not a member under the SDPAA policy.[1]

2. The magistrate judge erred in applying the doctrine of *ejusdem generis* when interpreting the SDPAA policy.

3. The magistrate judge erred in concluding collateral estoppel does not apply to the legal question of whether Goddard is a member under the SDPAA policy.

(Docket 75 at pp. 1-2). SDPAA's objection to the magistrate judge's conclusions of law and recommendations is summarized as follows:

> If plaintiff is a "member" entitled to SDPAA coverage, then the magistrate judge erred in concluding there was insufficient evidence presented to determine plaintiff is not entitled to duplicate coverage under both the liability and the uninsured motorist coverages of the SDPAA policy.

(Docket 77). Each of these objections will be addressed separately.

---

[1]That document appears as the "Governmental Liability Coverage Agreement" in the record. (Docket 44-1). For consistency with the parties arguments and the report and recommendation, it will be referred to as the "SDPAA policy."

**1. THE MAGISTRATE JUDGE ERRED AS A MATTER OF LAW IN CONCLUDING GODDARD IS NOT A MEMBER UNDER THE SDPAA POLICY.**

The magistrate judge concluded the language of the SDPAA policy was not ambiguous. (Docket 73 at p. 31). The magistrate judge determined Ms. Goddard was not a "member" as that term is defined in the SDPAA policy. Id. at p. 27. Based on this conclusion, the magistrate judge recommended SDPAA's motion for summary judgment be granted. Id. at p. 46.

"State law controls the construction of insurance policies when a federal court is exercising diversity jurisdiction." Bell v. Allstate Life Ins. Co., 160 F.3d 452, 455 (8th Cir. 1998). "Because this case is in federal court based on diversity jurisdiction, [South Dakota's] substantive law controls . . . analysis of the insurance policy." Babinski v. American Family Ins. Group, 569 F.3d 349, 351-52 (8th Cir. 2009). In a diversity action, the court uses South Dakota "state law to construe insurance policies." Hawkeye-Security Insurance Co. v. Bunch, 643 F.3d 646, 649 (8th Cir. 2011).

Ms. Goddard must be a "member," as defined in the SDPAA policy, before she can invoke the uninsured motorist provision of the policy. (Docket 73 at p. 17). The uninsured motorist coverage provision of the SDPAA policy provides as follows:

> We will pay those amounts that a member is legally entitled to recover as damages from the owner or operator of an uninsured automobile . . . . The damages must result from injury sustained by the member and caused by an occurrence resulting from the

> . . . use of, or when stuck by, an uninsured automobile . . . . Use includes operating the vehicle as well as getting into or out of, or being in or on the vehicle. . . .

(Docket 44-1, p. 13).

In order to analyze Ms. Goddard's claim that she is a "member" and entitled to coverage under the uninsured coverage section of the SDPAA policy, the court must interpret the relevant portions of the policy. First, the introduction to the SDPAA policy declares:

> Throughout this Agreement, words and phrases . . . have special meaning. You and your refer to the Named Member shown in the Declarations. Member means any person or organization qualifying as such under Section II - WHO RECEIVES COVERAGES of this Agreement. We, us, and our refer to the South Dakota Public Assurance Alliance.

(Docket 44-1 at p. 4) (bold deleted).[2]

Section II of the SDPAA policy defines who is a "member" entitled to coverage. This entire section is critical to the analysis and reads as follows:

> Member means:
>
> A. you, including your governing body, Boards, Commissions, or Councils;
>
> B. while acting on your behalf or in your interest, any past, present or future:
>
> 1. member of your Governing Body, Boards, Commissions, or Councils;

[2]All bold emphasis in the SDPAA policy is deleted without further reference.

2. elected or appointed official;

3. employee acting within the scope of their employment;

4. volunteer or student performing a service for you at your request;

5. volunteer fire company, volunteer ambulance service or other volunteer emergency services entity.

This does not include any elected or appointed official, Board, Commission or Council member, employee or volunteer with respect to any automobile owned by such person, unless acting within the scope of their duties for you;

C. any organization, other than a joint venture, which you acquire or form and over which you maintain ownership or majority ownership interest;

D. anyone else while using, with your permission, any automobile owned, hired or borrowed by you except the owner or anyone else from whom you hire or borrow such vehicle.

(Docket 44-1 at p. 8). The SDPAA policy does not expressly include or exclude passengers. (Docket 73 at p. 17). A determination of whether Ms. Goddard is a "member" involves principles of contract interpretation. Id.

The South Dakota Public Assurance Alliance is another name for the Public Entity Pool for Liability ("PEPL"). South Dakota Public Entity Pool for Liability v. Winger, 1997 SD 77, ¶ 22, 566 N.W.2d 125, 126. The purpose of PEPL is to provide a limited waiver of sovereign immunity to provide liability coverage for state employees, subdivisions of the state, and their employees,

who through negligence cause harm to others. ("The purpose of this program is to provide a fund as the sole source for payment of valid tort claims against all member public entities of the state and their officers and employees for all liability they may incur based upon negligence in the operation of motor vehicles or negligence in performing other acts within an employee's scope of employment . . . ."). Hansen v. South Dakota Department of Transportation, 1998 SD 109, ¶ 11, 584 N.W.2d 881, 883-84 (citing SDCL § 3-22-1) ("Except insofar as a public entity, including the state, participates in a risk sharing pool or insurance is purchased pursuant to § 21-32A-1, any employee, officer or agent of the public entity, including the state, while acting within the scope of his employment or agency . . . is immune from suit or liability for damages . . . ."). Id. at 884 (citing SDCL § 21-32-16). See also Kyllo v. Panzer, 535 N.W.2d 896, 900 (S.D. 1995) ("Under the current statutory scheme, unless a claim falls within PEPL fund coverage, the doctrine of sovereign immunity applies to abrogate that claim.").

The PEPL fund also "provides underinsured motorist coverage for employees injured in the scope of employment and while acting on behalf of or in the interest of their employers." Winger, 1997 SD at ¶ 2, 566 N.W.2d at 126. "Under the contract for PEPL coverage, an employee must be acting on behalf of or in the interest of the public entity at the time of the accident.

Underinsured motorist coverage is included." Id. at 127 (internal citation and quotation marks omitted).

Whether the language of the SDPAA policy is ambiguous is a question of law. Bunkers v. Jacobson, 2002 SD 135, ¶ 15, 653 N.W.2d 732, 738. Under South Dakota law, an insurance policy is only ambiguous when "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Arch v. Mid-Dakota Rural Water System, 2008 SD 122, ¶ 9, 759 N.W.2d 280, 282 (internal citation omitted). To determine whether the term "member" as defined in Section II of the SDPAA policy includes a passenger on the City's trolley, it is beneficial to look to the other provisions of the policy for the context in which the word is used. Baum v. Helget Gas Products, Inc., 440 F.3d 1019, 1023 (8th Cir. 2006).

Section I - Definitions of the SDPAA policy includes several definitions of significance. "Claim means a formal demand received by the member for money or services, including the service of suit or institution of arbitration proceedings against the member." (Docket 44-1 at p. 4) (emphasis added). "Suit means a civil, court . . . proceeding that alleges injury to which this Agreement applies. Suit includes an arbitration . . . in which such injury is claimed and to which the member must submit or does submit with our consent." Id. at p. 7 (emphasis added). "Uninsured Automobile . . . means .

. . a hit-and-run automobile where neither the operator or owner can be identified and which causes injury to a member . . . without physical contact with the member or with a vehicle occupied by the member, if the facts of the occurrence can be proven by independent corroborative evidence, other than the testimony of the member making a claim under this Agreement, unless such testimony is supported by additional evidence." Id. (emphasis added).

By contrast, other portions of the SDPAA policy do not speak of a "member" when addressing claims made by non-employees for injuries caused by City employees. "Damages means monetary compensation to one who has been injured." (Docket 44-1 at p. 5). "Injury means: A. harm, including sickness or disease, to the physical health of any person, including resulting death . . . ." Id. at pp. 5-6. "Occurrence means an accident . . . or a commission of a wrongful act." Id. at p. 6.

The SDPAA policy provides coverage where the City (a member), through its employee, Mr. Boub (also a member),[3] is responsible for injuries caused to a person not employed by the City. "GOVERNMENTAL LIABILITY COVERAGE" provides as follows:

> We will pay those amounts that a member becomes legally obligated to pay as damages because of injury arising out of your covered operations . . . and caused by an occurrence . . . .

[3] See Sections II(A) and B(3). (Docket 44-1, p. 8).

> The most we will pay for the sum of all damages because of . . . all injury in any one accident arising out of the ownership . . . or use of an automobile owned by you is the limit designated in the Schedule of Coverages For Automobile Liability . . . .

(Docket 44-1 at p. 10). This type of coverage is commonly referred to as "general liability coverage." This coverage contemplates a claim by an outside party against a "member," that is the city, city official, employee, or member of a volunteer group working under or for the city. (Docket 44-1 at p. 10).[4]

The SDPAA policy provides coverage for medical expenses incurred as the result of an occurrence involving an automobile. "MEDICAL EXPENSES - AUTOMOBILE" provides as follows:

> We will pay reasonable expenses incurred for necessary medical . . . services to:
>
> 1. a member who sustains injury caused by an occurrence while in, on, getting into or out of an automobile;
>
> 2. a member, while a pedestrian, when struck by an automobile; or
>
> 3. anyone else who sustains injury caused by an occurrence arising out of your covered operations while in, on, getting into or out of an automobile.

[4]By contrast, a city employee (who is a defined member) injured because of the negligence of another city employee, such as Mr. Boub, would have their injury claim resolved through the City's workers compensation plan.

(Docket 44-1 at pp. 10-11). This coverage is commonly referred to as "med-pay coverage." This coverage does not "pay for . . . injury to any employee . . . arising out of and in the course of employment by you . . . ."[5] Id. at p. 11. The third subsection of the med-pay provision relating to "anyone else" would not make sense if a City guest passenger was intended to be a "member" under Section II. The first two subsections of the med-pay provision specifically provide coverage for a "member," and the third subsection provides coverage for "anyone else" who may be injured as the result of the operation of a city automobile, whether that "anyone else" is a passenger or a pedestrian.

"Applying the general principle of contract construction that no provision of a contract should be interpreted in a manner that would render it surplusage" to include a passenger in the definition of "member" in Section II would render the third subsection of the med-pay provision "wholly redundant and therefore mere surplusage." Dunne v. Libbra, 330 F.3d 1062, 1063 (8th Cir. 2003). If a passenger was intended to be a "member" under Section II, the third subsection of the med-pay provision would be unnecessary and surplusage.

Another section which would have an inconsistent result if "member" is interpreted as argued by plaintiff is "MEMBER EXPENSES." That section

---

[5]This exclusion occurs because an employee injured on-the-job would be entitled to workers compensation coverage.

provides "[w]e will pay the reasonable expenses, including actual loss of wages or salary, incurred by the member, at our request, in assisting us in the investigation or defense of any claim." (Docket 44-1 at p. 12). If plaintiff, who is not a City employee, is included in the definition of "member," then the policy would require SDPAA to pay plaintiff's "reasonable expenses, including actual loss of wages or salary, incurred . . . in assisting (SDPAA) in the investigation or defense of any claim." This would be an absurd and unreasonable interpretation of the policy.

> Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation. . . . This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.

Lakes' Byron Store, Inc. v. Auto-Owners Insurance Co., 1999 SD 25, 589 N.W.2d 608, 609 (citations and quotations omitted).

Each of the first three subparagraphs of Section II identifies an individual who is performing in service of the City. See Section II(A), (B), and (C). (Docket 44-1 at p. 8). Read in context with the other portions of the SDPAA policy and the underlying South Dakota public entity liability pool law, the term "member" under subparagraph D is clear and unambiguous. To be a "member" under subparagraph D the person must be performing a public service or acting in the same capacity as an employee of the City.

Plaintiff was not performing a public service or acting in the same capacity as an employee of the City at the time of the trolley crash. Plaintiff is not included in the definition of "member" and is not entitled to coverage under the uninsured motorist provision of the SDPAA policy. Plaintiff's objection to the report and recommendation on that basis is overruled.

**2. THE MAGISTRATE JUDGE ERRED IN APPLYING THE DOCTRINE OF *EJUSDEM GENERIS* WHEN INTERPRETING THE SDPAA POLICY.**

Plaintiff objects to the magistrate judge's discussion in the report and recommendation about the application of *ejusdem generis*. (Docket 75, p. 7). Under the principle of *ejusdem generis*, an ambiguity is resolved by the following rule: "where general words follow an enumeration of specific terms, the general words are read to apply only to other items like those specifically enumerated." Garcia v. United States, 469 U.S. 70, 74 (1984). But to apply the doctrine of *ejusdem generis*, the language of the document in question must be ambiguous. Id. ("the rule of *ejusdem generis*, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty.") (internal citations and quotation marks omitted). Id. See also In the matter of the Grievance of Wendell, 1998 SD 130, ¶ 7, 587 N.W.2d 595, 597 ("Under the canon of statutory construction known as *ejusdem generis*, where general words follow the enumeration of particular classes of things, the general words will

be construed as applying only to things of the same general class as those enumerated.") (internal citation and quotation marks omitted).

The court found the term "member" to be clear and unambiguous in the SDPAA policy. If the policy was initially deemed ambiguous, then the application of the doctrine of *ejusdem generis* would compel the same conclusion already reached by the court.

Each of the first three subparagraphs of Section II identifies an individual who is performing in the service of the City. See Section II(A), (B), and (C). (Docket 44-1 at p. 8). The term "member" under subparagraph D, read in context with the other portions of Section II must be performing a public service or acting in service of the City. Plaintiff was not engaged in any service on behalf of the City and is not included in the catch-all provision of subparagraph (D) of Section II.

The court will not apply the doctrine of *ejusdem generis* because the SDPAA policy is clear and unambiguous. Plaintiff's objection to the report and recommendation on that basis is overruled.

**3. THE MAGISTRATE JUDGE ERRED IN CONCLUDING COLLATERAL ESTOPPEL DOES NOT APPLY TO THE LEGAL QUESTION OF WHETHER GODDARD IS A MEMBER UNDER THE SDPAA POLICY.**

Plaintiff claims the magistrate judge erred by concluding the doctrine of collateral estoppel does not apply in this case. (Docket 75, p. 8). Plaintiff argues the issue of Ms. Goddard's entitlement to inclusion in the definition

of "member" was already resolved in plaintiff's favor in the South Dakota Circuit Court case of Gloe v. City of Deadwood, Civ. No. 09-991 (Judge Johnson) (Order Denying Defendant SDPAA's Motion for Summary Judgment and Scheduling Order).[6] Id. at pp. 8-9. In Gloe, it is undisputed the court ruled the plaintiff is a " 'member' within the meaning of the policy." Id. at p. 9 (Order Denying Defendant SDPAA's Motion for Summary Judgment and Scheduling Order).

The full faith and credit statute requires that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The doctrine of collateral estoppel applies if all four of the following tests have been met:

> (1) Was the issue which was decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Gerrard v. Larsen, 517 F.2d 1127, 1130 (8th Cir. 1975) (internal citation and quotation marks omitted). South Dakota applies the same four tests. See Grand State Property, Inc. v. Woods, Fuller, et al., 1996 SD 139, ¶12, 556 N.W.2d 84, 87 (internal citations omitted).

---

[6]It is undisputed that Ms. Goddard and Ms. Gloe were both passengers on the City's trolley at the time of the crash.

Plaintiff argues all four of the tests have been met:

> (1) the issue presented to Judge Johnson is identical to the one before this Court; (2) judgment on a motion for summary judgment is just as binding as a judgment entered after a trial of the facts . . . ; (3) SDPAA was a party in the state court proceeding; and (4) SDPAA was given a full and fair opportunity to be heard on the issue.

(Docket 75, p. 10). Plaintiff cites Ruple v. City of Vermillion, 714 F.2d 860, 862 (8th Cir. 1983) as authority that under test (2) above, the circuit court's order on summary judgment "is just as binding as a judgment entered after a trial of the facts." (Docket 75, p. 10). In Ruple, "plaintiff first sought relief in the Circuit Court for the First Judicial Circuit of South Dakota. . . . The complaint was dismissed on summary judgment. . . . and the judgment of dismissal has now been affirmed by the Supreme Court of South Dakota." Ruple, 714 F.2d at 861.

There is no evidence the outcome in Gloe was a final decision on the merits. Gerrard, 517 F.2d at 1130. The court finds the decision in Gloe is an interlocutory ruling under South Dakota law. See SDCL § 15-6-54(b). A circuit court's order on summary judgment as to one issue, without "express determination by the trial court that there was good cause to appeal, . . . is [an] interlocutory [ruling] and unappealable." Cowan Brothers L.L.C., v. American State Bank, 2007 SD 131, ¶ 11, 743 N.W.2d 411, 415 (internal quotation marks omitted).

The doctrine of collateral estoppel does not apply. Plaintiff's objection to the report and recommendation on that basis is denied.

### 4. IF PLAINTIFF IS A "MEMBER" ENTITLED TO SDPAA COVERAGE, THEN THE MAGISTRATE JUDGE ERRED IN CONCLUDING THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO DETERMINE PLAINTIFF IS NOT ENTITLED TO DUPLICATE COVERAGE UNDER BOTH THE LIABILITY AND THE UNINSURED MOTORIST COVERAGES OF THE SDPAA POLICY.

This court finds plaintiff is not a "member" entitled to SDPAA coverage. Defendant SDPAA's objections to the magistrate judge's report and recommendation based on the duplicate coverage issue is denied as moot.

## CONCLUSION

Based on above analysis, it is hereby

ORDERED that defendant SDPAA's motion for summary judgment that plaintiff is not a "member" entitled to coverage under the uninsured provision of the SDPAA policy (Dockets 41 and 43, p. 8) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Docket 56) is denied as moot.

IT IS FURTHER ORDERED that plaintiff's objections (Docket 75) and defendant SDPAA's objections (Docket 77) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation of Magistrate Judge Veronica L. Duffy (Docket 73) is adopted by the court.

IT IS FURTHER ORDERED that plaintiff's second corrected amended complaint (Docket 26) as against defendant SDPAA is dismissed with prejudice.

Dated September 29, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE